```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                          WESTERN DIVISION
_____

UNITED STATES OF AMERICA,       )
                                )
    Plaintiff,                  )
                                )
v.                              )   No. 23-cr-20014-JPM-tmp
                                )
MARCHELLO MOORE,                )
                                )
    Defendant.                  )
_____

                      REPORT AND RECOMMENDATION
_____
```

Before the court by order of reference is a Motion to Suppress filed by defendant Marchello Moore on March 24, 2023. (ECF Nos. 24, 25.) The government filed a response on April 5, 2023. (ECF No. 32.) After Moore's prior counsel was allowed to withdraw, Moore was granted leave to file a supplemental Motion to Suppress. Moore, through his new counsel, filed that motion on May 3, 2023. (ECF No. 48.) The government filed a response on May 17, 2023. (ECF No. 50.) For the reasons below, it is recommended that the Motion to Suppress be denied.

### I.   PROPOSED FINDINGS OF FACT

The following proposed findings of fact are based on the testimony of Memphis Police Department ("MPD") Sergeant Thomas Walters, MPD Sergeant Rickey Dugger, and MPD Detective Kyle Vlastos, all of whom testified credibly at the evidentiary hearing

held on May 23, 2023. The evidence presented at the hearing also included the Application for Installation and Monitoring of a GPS Tracking Device (Ex. 1), and the section of the MPD Policy and Procedures manual titled, "Police Vehicle Operation/Pursuit Policy." (Ex. 2.) The affidavit in support of the GPS tracking device warrant described nine robberies of businesses located in Memphis, Tennessee that investigators believed were connected. (Ex. 1.) The facts below regarding these robberies are taken almost verbatim from the affidavit.

On July 26, 2022, at around 12:20 a.m., a male suspect robbed a Circle K convenience store located at 4010 Austin Peay Highway. (Ex. 1 at 2.) The suspect approached the counter, raised up his shirt to reveal a black and silver handgun, and demanded money from the register. (Id.) After obtaining about $40 in cash, the suspect fled the scene in a silver Toyota Camry. (Id.) The suspect was described as a Black male, 5'10" and 200 pounds, wearing a black shirt, light colored blue jeans, and gray shoes. (Id.) Later that same day, at 11:20 a.m., a male suspect entered a Subway restaurant located at 2838 Hickory Hill Road, pointed a silver and black handgun at the employee, and demanded money. (Id.) After taking about $120, the suspect ordered the employee to go to the back of the store. (Id.) The suspect drove off in a black Chevrolet Impala. (Id.) The suspect was described as a Black male in his

forties, 5'9" and 160 pounds, wearing a black hat, white mask, light blue/gray shirt, blue jeans, and black shoes. (Id.)

On August 27, 2022, at around 1:35 p.m., another Subway restaurant, located at 3647 South Mendenhall Road, was robbed. The suspect pointed a silver and black handgun at an employee and demanded money. (Id.) The suspect obtained about $120 from the register and then told the employee to wait in the back of the store for five minutes. (Id.) The suspect fled in a black Chevrolet Impala and headed northbound on South Mendenhall Road. (Id.) The suspect was described as a Black male in his late thirties to early forties, wearing a black/camo hat, white mask, light blue shirt, blue jeans, black watch, and black, orange, green, and gray shoes. (Id.)

During the investigation, police attempted to identify the Impala by searching their Flock license plate reader system. A black Chevrolet Impala bearing Tennessee tag number 32BE34 was captured by a Flock camera at the intersection of South Mendenhall Road and Cottonwood Road about seven minutes after the August 27 Subway robbery. (Id.) The intersection of South Mendenhall and Cottonwood Road is about 1.5 miles from 3647 South Mendenhall. (Id.) The image of the Impala captured by the Flock camera closely resembled the Impala captured on the Subway video system during the robbery. (Id.) Both vehicles had rims and silver trim around the windows. (Id.)

When running the tag through the National Crime Information Center database ("NCIC"), the system showed that the plates were registered to a 2021 Dodge Challenger belonging to a "Jana Nichols." (Tr. 62.) MPD Detective Kyle Vlastos investigated Nichols's potential involvement by searching police reports that mentioned her name. (Tr. 62-63.) When reviewing these reports, Detective Vlastos investigated the men mentioned and determined that they were too young to be the suspect in the robberies. (Id.) Nothing in his investigation led Detective Vlastos to believe that Nichols was involved in the robberies. (Tr. 62.) At the suppression hearing, Detective Vlastos testified, "It's very common from my experience for people engaged in criminal activity to try to disguise their identity and switch tags. Sometimes tags are stolen and put on cars." (Tr. 61.)

On August 31, 2022, at around 11:35 a.m., a male suspect entered the Half Off Shoes Store located at 3625 Hickory Hill Road and robbed the business at gunpoint. (Id.) The suspect obtained cash from the register and told the employee and a witness to go to the back of the store and wait for five minutes. (Id.) The suspect left in a silver/gray Toyota Camry. (Id.) The suspect was described as a Black male, approximately 6'0", medium build, wearing a black ski mask, white shirt, and gray pants. (Id.)

On September 4, 2022, at around 4:20 a.m., the Circle K located at 4010 Austin Peay Highway was robbed at gunpoint again.

(Id. at 2-3.) The armed suspect obtained about $148 from the register and ordered the employee to go to the back of the store and look away, or else he would shoot. (Id. at 3.) The suspect drove off in a black Chevrolet Impala. (Id.) The suspect was described as a Black male of medium build, wearing a black ski mask, a gray shirt, blue jeans, a black watch, and multicolored shoes. (Id.)

On September 4, 2022, at around 3:39 p.m., a man entered the Dollar Tree store located at 3685 Lamar Ave, pointed a silver and black handgun at an employee, and demanded money from the register. The suspect obtained about $466 and then ordered the employees to go to the back of the store. (Id.) The suspect fled the scene in a black Chevrolet Impala. (Id.) The suspect was described as a Black male of medium build, wearing a black ski mask, gray shirt, blue jeans, multicolored shoes, a black watch, and a black glove worn on his left hand. (Id.) During the investigation, Detective Vlastos ran Tennessee tag number 32BE34 through the Flock system and found that the Impala had passed a camera at the intersection of Lamar Avenue and Democrat Road approximately twenty minutes before the robbery occurred. (Id.) That intersection is half a mile away from the Dollar Tree. (Id.)

On September 6, 2022, investigators using the Flock system found that the black Chevrolet Impala with Tennessee plate 32BE34 had passed the camera located at Highway 14 and Pleasant Ridge

-5-

several times over the prior thirty days. (Id. at 4.) An officer searched the Highway 14 and Pleasant Ridge reader for Toyota Camrys and located a vehicle that closely resembled the one seen at the 4010 Austin Peay and 3625 Hickory Hill robberies. (Id.) This silver Toyota Camry had a Tennessee license plate with the tag number 035BDLY, and like the Impala, had passed the camera several times over the past thirty days. (Id.) The registered owner of the Camry was a woman named Felicia Miller, who had a home address of 6942 North Knoll Avenue, not far from the Highway 14 and Pleasant Ridge Flock camera. (Id.)

On September 9, 2022, Detective Vlastos and a "Sergeant Moseley" conducted surveillance of 6942 North Knoll Avenue. (Id.) They observed the black Chevrolet Impala with Tennessee tag number 32BE34 parked on the street in front of the house. (Id.) The same day, Sergeant Moseley and Detective Vlastos surveilled the Chickasaw Place Apartments located at 230 East Red Oak Street, which was a location the Toyota Camry frequently passed on the Flock reader. (Id.) Detective Vlastos observed the Camry come and go from the apartment complex. (Id.) The car was driven by a Black male who matched the description of the suspect in the robberies. (Id.)

On September 10, 2022, at around 7:53 p.m., a MAPCO convenience store located at 1505 East Brooks Road was robbed at gunpoint. (Id. at 3.) The suspect obtained about $125 in cash from

the register and drove off in a black Chevrolet Impala. (Id.) The suspect was described as being a Black man, approximately 6'0" with an athletic build, wearing a black shirt, blue jeans, multicolored shoes, a black ski mask, and one black glove on his left hand. (Id.)

On September 12, 2022, at around 4:00 a.m., a male suspect robbed the Circle K located at 2678 Getwell Road. (Id.) The suspect pointed a black and silver handgun at the store employee and demanded money from the register. (Id.) The suspect obtained about $105 in cash and fled in a black Chevrolet Impala. (Id.) The suspect was described as a Black male, approximately 200 pounds, wearing a blue shirt, blue jeans, black ski mask, and black shoes. (Id.)

That same day, at around 8:53 a.m., the MAPCO located at 5325 Summer Avenue was robbed. (Id.) The suspect pointed a black and silver handgun at the clerk and obtained about $148 from the register. (Id.) He fled the scene in a black Chevrolet Impala heading westbound on Summer Avenue toward Interstate 40. (Id.) The suspect was described as a Black male, approximately 5'6," wearing a blue shirt, light blue jeans, black ski mask, and black shoes. (Id.) Sergeant Mosely was surveilling 6942 North Knoll Avenue when she observed the Impala arrive at the house approximately twenty-one minutes after the MAPCO robbery. (Id. at 4.) She observed a Black male wearing a white polo shirt, with a blue shirt

-7-

underneath, blue jeans, black shoes, and carrying a black object exit the Impala. (Id.)

Investigators reviewed the surveillance footage from each of the robberies. They observed what appeared to be the same suspect using the same black and silver firearm during all of the robberies. (Tr. 55.) In several of the robberies the suspect appeared to be wearing the same shoes and the same black watch on his left wrist. (Tr. 56.) On September 12, 2022, Detective Vlastos submitted a state court application for the installation and monitoring of a GPS tracking device on the black Chevrolet Impala. (Id.) The application was granted the same day and a GPS tracker was attached to the Impala. (ECF No. 48-2; Tr. 69.)

On September 16, 2022, MPD Sergeant Thomas Walters was notified that the GPS tracker was giving a signal that the Chevrolet Impala was on the move. (Tr. 26.) In an attempt to identify the driver, Sergeant Walters initiated "loose surveillance" of the vehicle.[1] As Sergeant Walters was surveilling the Impala, he saw it stop on Cochese Street, about a block away from the Circle K on Getwell Road that had been previously been robbed. (Tr. 28.) Sergeant Walters parked directly across from the

---

[1] "Loose surveillance" involves officers driving in the general vicinity of the vehicle but does not require a direct visual of it since the tracker will show the vehicle's location. (Tr. 28) If the vehicle stops, officers will get closer to it so that they can attempt to identify who is in the vehicle. (Tr. 26.)

-8-

Circle K while the rest of the team, including MPD Sergeant Rickey Dugger, maintained surveillance on the Impala. (Tr. 29, 41.) Sergeant Walters observed a man wearing a red t-shirt and blue jeans, who looked similar to the robbery suspect, enter the Circle K. (Id.) The man remained inside for one or two minutes, and then exited the convenience store. (Id.) As soon as the suspect walked out of the parking lot, he started to run. (Id.) Sergeant Walters communicated that information to the surveillance team and then went inside the Circle K. (Id.) According to the store clerk, a man in a red t-shirt and blue jeans had entered the store, brandished a handgun, and demanded money from the cash register. (Tr. 30) When the clerk ran to hide behind a safe, the suspect left the store. (Id.)

While Sergeant Walters was in the Circle K, Sergeant Dugger observed the suspect get into the black Impala and drive away. (Tr. 42-43.) The suspect was driving at a normal speed of forty to forty-five miles per hour. (Id.) Sergeant Dugger, driving an unmarked gray F-150 truck that did not have lights or sirens, followed the Impala at a distance of six or seven car lengths. (Tr. 43.) As he was following the Impala, Sergeant Dugger was advised by Sergeant Walters that the man wearing the red shirt had attempted to rob the Circle K using a firearm. (Tr. 43, 45.) Upon learning this information, Sergeant Dugger sought the assistance of MPD patrol officers. (Tr. 43-44.) MPD officers caught up with

-9-

the Impala and activated their blue lights and sirens. (Tr. 44.) When the Impala refused to stop, a chase ensued for about twenty-five minutes. (Tr. 45.) The driver of the Impala, later identified as defendant Marchello Moore, eventually got out of the car and ran from the police. (Tr. 84.) He was arrested shortly thereafter. (Id.) Officers discovered a handgun about fifty feet from where Moore was arrested. (Id.) Video from the MPD helicopter aviation unit that had been assisting with the pursuit captured Moore throwing the handgun in the woods. After Moore was taken into custody, a warrant for Felicia Miller's home was executed. (Tr. 85.) Clothing that matched those of the suspect in some of the robberies was discovered during the search. (Id.) A search warrant was also executed on the Impala and Moore's cell phone records. (Tr. 86.)

A federal grand jury in the Western District of Tennessee returned a twenty-two count indictment against Moore on January 26, 2023, charging him with violations of 18 U.S.C. §§ 751, 924(c), and 1951: escape from BOP custody, Hobbs Act robberies, and use of a firearm during and in relation to those robberies. (ECF No. 12.)

## II.   PROPOSED CONCLUSIONS OF LAW

Moore seeks to suppress the evidence in this case, arguing that the police pursuit was conducted in violation of MPD's policies and procedures, the affidavit in support of the warrant is not supported by probable cause, and a material fact was omitted

from the warrant application. (ECF Nos. 24 at PageID 52; 48 at PageID 97, 100.)

**A.   Violation of MPD Pursuit Policy**

Moore argues that officers violated MPD's pursuit policy when they chased him following the attempted robbery of the Circle K, rendering the pursuit unconstitutional. Moore cites cases involving inventory searches, arguing that when conducting an inventory search, officers are required to follow "standardized criteria . . . or established routine" to assure that inventory searches are not "a ruse for general rummaging in order to discover incriminating evidence." (ECF No. 24 at PageID 54) (citing Florida v. Wells, 495 U.S. 1, 4 (1990)). Moore contends that as is the case with inventory searches, MPD has implemented policies that govern police pursuit procedures. According to Moore, because MPD officers violated their own pursuit policy, his Fourth Amendment rights were violated. (ECF No. 24 at PageID 56.)

Moore cites no authority for his argument that a violation of police pursuit procedures results in suppression of evidence in a criminal prosecution. Indeed, "[t]he exclusionary rule applies only to *constitutional* violations and, in limited instances, to statutory violations." United States v. Ledbetter, 2:15-CR-080, 2015 WL 7017367, at *8 (S.D. Ohio Nov. 12, 2015)(citing United States v. Caceres, 440 U.S. 741, 754-55 (1971)). Here, any alleged violation by the MPD officers of their pursuit policy in their

-11-

vehicle chase of Moore would not provide a basis to suppress evidence.[2]

In any event, the undersigned finds that the MPD officers did not violate their pursuit policy. The policy states: "Vehicle pursuits are authorized only when an officer has probable cause to believe that one or more occupants of a fleeing vehicle have committed a Violent Felony." (Ex. 2.) A "Violent Felony" is defined by the policy as "An offense that involves serious bodily injury, death to a victim or bystander, threats reasonably calculated to produce such results, or sexual contact or sexual penetration." (Ex. 2.) In this case, the Impala was suspected of being used as the get-away car during several armed robberies. The MPD officers began their pursuit after learning that the occupant of the Impala had just attempted to commit an armed robbery of the Circle K. Thus, when MPD officers were pursuing the vehicle, they had probable cause to believe that an occupant of the Impala had committed an offense involving threats reasonably calculated to cause serious bodily injury or death. The undersigned finds that the officers did not violate the MPD pursuit policy.

**B.   Probable Cause**

---

[2] It does not appear that Moore seeks to challenge the seizure of the gun that he threw away before he was taken into custody. See United States v. Ligon, 861 F. App'x 612, 620 (6th Cir. 2021); United States v. Martin, 399 F.3d 750, 752-53 (6th Cir. 2005).

Moore argues the installation of the GPS tracking device to the Impala violated his Fourth Amendment rights because the order authorizing it was not supported by probable cause. Specifically, Moore contends the affidavit failed to establish a sufficient nexus between the place to be searched and the evidence sought.[3] The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The "government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a search." United States v. Jones, 565 U.S. 400, 404 (2012). A tracking device warrant may be issued "if a supporting affidavit establishes probable cause to believe that the device will uncover evidence, fruits, or instrumentalities of a crime." United States v. Harden, No. 220CR20280TGBEAS, 2021 WL 5506439, at *3 (E.D. Mich. Nov. 24, 2021) (citing United States v. Coleman, 923 F.3d 450, 454 (6th Cir. 2019)). To determine if probable cause exists, the task of the issuing judicial officer is "to make a practical, commonsense decision whether, given all the circumstances set

---

[3] Moore also argues that the descriptions of the robbery suspect are vague and inconsistent throughout the affidavit. Although the eyewitness descriptions vary somewhat, the warrant application was for a GPS tracking device for a specific vehicle that was linked to several of the robberies, not to a particular person. The undersigned finds this argument is without merit.

forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Franklin, 622 F. App'x 501, 508 (6th Cir. 2015). "The standard of review for the sufficiency of an affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" United States v. Greene, 250 F.3d 471, 478 (6th Cir. 2001) (quoting United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991)); see also United States v. Ugochukwu, 538 F. App'x 674, 678 (6th Cir. 2013). A reviewing court must consider whether the affidavit contains specific evidence supporting a proper nexus between the vehicle and the alleged criminal activity. Harden, 2021 WL 5506439, at *6. Search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny. United States v. Baechtle, No. 2:13-cr-20054-SHM, 2015 WL 893348, at *7 (W.D. Tenn. Mar. 2, 2015) (citing United States v. Johnson, 351 F.3d 254, 258 (6th Cir. 2003)). Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. United States v. Brooks, 594 F.3d 488, 492 (6th Cir. 2010).

Moore argues that the affidavit "fails to affirmatively connect the tag TN 32BE43 to a single robbery." (ECF No. 48 at

PageID 97.) This is plainly incorrect. The affidavit contains many facts that support a finding of probable cause that the black Chevrolet Impala bearing license plate 32BE34 was connected to the robberies being investigated. The affidavit stated a black Chevrolet Impala was used in seven of the robberies being investigated and a silver Toyota Camry was used in two of them. (Ex. 1 at 2-3.) Officers were able to identify a Chevrolet Impala with Tennessee tag number 32BE34 on a Flock camera about 1.5 miles from the robbery of the Subway on Mendenhall Road about seven minutes after that robbery. (Ex. 1 at 2.) The Impala in question had similar rims and trim to the Impala captured on Subway's surveillance video. (Id.) The affiant was able to identify the same black Impala with Tennessee license plate 32BE34 on a Flock camera a half a mile from the robbery of the Dollar Tree on Lamar Avenue about twenty minutes before the robbery. (Ex. 1 at 3.) When officers were able to identify the other vehicle suspected in some of the robberies (silver Toyota Camry) and locate the address of the registrant, 6942 North Knoll Avenue, the black Impala bearing license plate 32BE34 was discovered parked in front of that residence. (Ex. 1 at 4.) Further, an investigator who was surveilling the North Knoll Avenue address observed the Impala return just twenty-one minutes after the robbery of the MAPCO on Summer Avenue. (Id.) The undersigned finds that there was a substantial basis for the issuing judicial officer to find that

the affidavit established probable cause the Impala was connected to the robberies.

**C.   Omission of a Material Fact**

Finally, Moore asserts that a material fact was omitted from the warrant application. The application states:

> During the investigation of these robberies, Memphis Police FLOCK cameras have registered the vehicle multiple times in the Memphis area; however, Investigators have been unable to obtain any physical evidence left at any of the robbery crime scenes. At this time, Investigators have no additional investigative leads which to follow.

(Ex. 1 at 4.) The warrant affidavit included the statement that the Impala's tag was run through NCIC and showed that it was registered to a Dodge Charger. (Ex. 1 at 2.) However, the affidavit did not state that the police had identified the registrant of the tag, which Moore argues constitutes an "investigative lead." (ECF No. 48 at PageID 100.) Moore contends that this is a material omission, and therefore the court must conduct an evidentiary hearing to determine whether probable cause exists after accounting for this omission.

In Franks v. Delaware, the Supreme Court held that a search based on a warrant that contains deliberately or recklessly false allegations is invalid unless the remaining portions of the affidavit provide probable cause. 438 U.S. 154, 156 (1978). "A Franks hearing is an evidentiary hearing during which defendants are allowed to present evidence concerning the veracity

-16-

of the challenged statements in the search warrant affidavit." United States v. Kelley, 596 F. Supp. 2d 1132, 1149 (E.D. Tenn. 2009) (citing United States v. Keszthelyi, 308 F.3d 557, 566–68 (6th Cir. 2002)); see also United States v. Brooks, No. 11-cr-20137 Ml/P, 2011 WL 7081072, at *3 (W.D. Tenn. Dec. 8, 2011) ("The purpose of a Franks hearing is to allow the defendant to challenge the truthfulness of statements in an affidavit in order to challenge the legality of a search warrant issued on the basis of the affidavit."). As the Sixth Circuit has explained:

> To obtain a Franks hearing, the movant must provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth. The movant must *also* show that the allegedly false statements were necessary for the magistrate's determination of probable cause. Therefore, 'if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

Mastromatteo, 538 F.3d at 545 (emphasis in original) (quoting Franks, 438 U.S. at 171-72). A Franks hearing may also be justified when there has been a material omission in an affidavit. United States v. Hampton, 760 F. App'x 399, 404 (6th Cir. 2019) (citing Mays v. City of Dayton, 134 F.3d 809, 815 (6th Cir. 1998)). However, the standard to obtain a Franks hearing for a material omission is higher than that for a false statement and is only merited in rare cases. Id. When there is a material omission of fact, a Franks hearing is granted only if the

-17-

defendant "makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause[.]" Id. at 816 (emphasis in the original).

The undersigned finds that Moore has failed to make a substantial preliminary showing that Detective Vlasto's "omission" of the registrant for Tennessee tag number 32BE34 was material, or for that matter, that it was done with an intention to mislead. Indeed, at the suppression hearing, Detective Vlastos explained that at the time he applied for the warrant, he did not believe that the registrant or the persons associated with the registrant were connected to the robberies. (Tr. 62.) Instead, he suspected that the tags on the Impala had been stolen from the Dodge Charger. (Tr. 61.) And even if the omitted information were to be included, the affidavit would contain ample probable cause to support the GPS tracking device warrant. See United States v. Coach, No. 16-20254-JTF/tmp, 2017 WL 9477643, at *4 (W.D. Tenn. Jun. 6, 2017). For these reasons, the undersigned finds that Moore has not made the necessary substantial preliminary showing to warrant a Franks hearing.

### III. RECOMMENDATION

For the reasons above, it is recommended that Moore's Motion to Suppress be denied.

Respectfully submitted,

-18-

```
                                    s/ Tu M. Pham
                                    TU M. PHAM
                                    Chief United States Magistrate Judge

                                    June 30, 2023
                                    Date
```

**NOTICE**

**NOTICE WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**